**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:15-CR-181** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JULIO AVILES, SR.** | : | |

## MEMORANDUM AND ORDER

### I.    Introduction

This case comes before us for consideration of a motion for release pending sentencing filed by the defendant, Julio Aviles. Aviles' motion is inspired by the current COVID-19 pandemic, and invites us to consider the intersection of law, medicine and science in a rapidly shifting factual context, marked by the continued spread of the coronavirus. With the legal, factual, medical and epidemiological terrain in flux we find this to be a close case. However, we recognize that in requesting release pending sentencing, Julio Aviles must overcome a series of statutory hurdles. First, by virtue of the serious drug trafficking charges lodged against him, Aviles was presumed at the time of his indictment to present a danger to the community. 18 U.S.C. § 3142(e). This presumption was further bolstered by Aviles' prior criminal history, which was marked by previous drug convictions. Convicted of all counts of drug trafficking after a seven-day jury trial, Aviles awaits sentencing and is now subject to a second, higher set of legal hurdles which he must

satisfy in order to secure release pending sentencing. 18 U.S.C. § 3143(a)(2). Finally, to the extent that he now wishes to cite some compelling circumstances, namely the COVID-19 pandemic, as the justification for his release, Aviles faces yet another set of legal hurdles, all of which must be met before we can consider his release.

This case comes before us for consideration of a motion for presentence release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i). In this case, the defendant is  subject to presentence detention pursuant to 18 U.S.C. § 3143(a)(2). Nevertheless, he seeks presentence release pursuant to 18 U.S.C. § 3145(c) which provides that: "A person subject to detention . . . , and who meets the conditions of release . . . , may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

In the instant case, the "exceptional reason" which the defendant asserts justifies the defendant's temporary release from presentence detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and is therefore ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. We also undertake this analysis mindful of the exacting legal standards set by statute in this case, which involves a request for bail by a criminal recidivist drug trafficker who is awaiting sentencing. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

## II.   <u>Factual Background and Procedural History</u>

On August 26, 2015, the defendant was charged with criminal conspiracy to distribute and possession with intent to distribute heroin, cocaine base, and cocaine hydrochloride; possession with intent to distribute heroin; possession with intent to distribute cocaine base; possession with intent to distribute cocaine hydrochloride; distribution of cocaine hydrochloride; distribution of cocaine base; three counts of distribution of heroin; possession of a firearm in furtherance of a drug trafficking crime; unlawful possession of a firearm; and maintaining drug-involved premises,

all in violation of 21 U.S.C. §§ 846; 856(a); 841 (a)(1), (b)(1)(B)(i), (b)(1)(B)(iii), and (b)(1)(C); and 18 U.S.C. §§ 924(c)(1)(A), 922(g)(1). Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings and a detention hearing were then conducted in this case on September 3, 2015.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: the defendant reported being born in Brooklyn, New York in 1968 and that his parents and siblings have since moved, his mother and several sisters to Puerto Rico and his father and some additional siblings to Arizona. The defendant himself moved to New Jersey, where he met and married his wife in 2008. Thereafter, they relocated to Lebanon, Pennsylvania with their three children, aged 24, 21, and 19, in the same year. The defendant reports that he has two other children outside of his marriage, ages 16 and 14, who live in New Jersey with their mother. He claimed that he had been unemployed and receiving disability benefits since 2009 and suffered from several herniated discs in his back and fibromyalgia. Despite his criminal recidivism with illicit drug manufacture and sale, the defendant reported having no personal history of illicit drug use, although he completed two court-ordered drug programs while incarcerated in New Jersey. At the time of the

4

pretrial report, the defendant was subject to supervision with the Lebanon County Probation Department.

The defendant's criminal history spans almost three decades in length and began when he was 20 years old with a conviction for the unlawful manufacture/distribution of a controlled substance—a conviction strikingly similar to the present offenses. Since that time he has faced numerous other charges surrounding controlled substances, including maintaining a controlled substance production facility; possessing a controlled substance on school property; and manufacture, delivery, and possession with intent to deliver controlled substances. In addition to these charges, the defendant has convictions for theft, unlawful possession of firearms, and driving without a license. At the time of his arrest, the defendant also had five outstanding traffic citations.

Based on these facts, the pre-trial services report also recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: his criminal activity while on supervision, his lack of verifiable employment, his criminal history, and his pattern of repetitive, similar criminal activity within his history.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which

could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the pre-trial detention of the defendant was warranted since he faced a maximum prison term of ten years or more if convicted and because he had failed to rebut the presumption in favor of detention against him.

The defendant's trial in this case began on April 3, 2017 and lasted seven days, resulting in a verdict of guilty as to all twelve counts against the defendant. (Doc. 437). Aviles was thereafter sentenced to life plus 60 months' imprisonment. His conviction and sentence were appealed to the Third Circuit, which affirmed Aviles' conviction, but vacated his sentence, remanding the case to the district court on the grounds that two of his prior drug trafficking offenses did not qualify as felonies. (Doc. 821). Thus, the defendant is now awaiting re-sentencing on these charges, which is presently scheduled to occur in late June.

In spite of this conviction and recidivist history, the defendant invites us to release him pending sentencing. The instant motion for temporary release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. Indeed, this risk has been heightened further due to the recent identification

of cases of COVID-19 in Dauphin County Prison, the correctional institution where the defendant is currently being housed. In addition to this concern, the defendant cites the following specific and individualized factors which also heighten these medical concerns in the instant case: his herniated discs and fibromyalgia, and recent diagnoses of diabetes, high blood pressure, and hyperlipidemia by prison medical staff, for which he takes medication in the prison setting, which he asserts make him more susceptible to contracting this virulent novel virus that has now made its way into the correctional facility where Aviles is being housed. Thus, Aviles posits that the threat that this novel coronavirus presents is no longer distant or speculative—it has appeared in the Dauphin County Prison in the form of asymptomatic carriers, which are difficult to identify and contain.

The Government, in turn, while not attempting to minimize the defendant's concerns regarding this virus, opposes this motion, arguing that the defendant's detention pending sentencing is statutorily mandated by 18 U.S.C. § 3143(a). In addition, the Government points out that the defendant has already been detained before his trial and that nothing has changed in this time that would justify the defendant's release.[1] The Government also notes that if the defendant were released, he would be sent to live with his proposed third-party custodian in New Jersey near

---

[1] We note that at the time of the Government's briefing, COVID-19 had not yet been discovered in Dauphin County Prison.

the location of his first two drug trafficking convictions. Quite simply, the Government asserts that the defendant has not met the high burden to justify his release.

For the reasons set forth below, while we believe that the changing medical landscape makes this a close case, we agree and will deny this motion.

## III.   **Discussion**

The defendant has been found guilty in this case and is awaiting sentencing. Therefore, the defendant's detention is typically mandatory pending his sentencing unless the court either "determines that there is a substantial likelihood that a motion for acquittal or new trial will be granted or the Government recommends that no sentence of imprisonment be imposed, and the court finds that the Defendant is not likely to flee or pose a danger to any other person or the community." United States v. Ortiz, 2020 U.S. Dist. LEXIS 67651, *9 (M.D. Pa. Apr. 17, 2020) (citing 18 U.S.C. § 3143(a)(2)). In this case, the defendant has been found guilty of serious drug trafficking and firearms offenses, the Government is recommending a sentence of imprisonment, and federal law would compel a lengthy jail term for Aviles. Thus, the exceptions provided in 18 U.S.C. § 3143(a)(2) do not relieve the court of the mandatory obligation to detain the defendant pending his sentencing.

In spite of this mandatory detention, the defendant has nevertheless filed the present motion for presentence release under 18 U.S.C. § 3145(c) in response to the

COVID-19 pandemic, alleging that this event presents an "exceptional reason" to compel his release. As courts within this district have explained:

> In order to address Defendant's request for temporary release pending sentencing, the court must first determine whether Defendant meets the criteria for release set forth in 18 U.S.C. §§ 3143(a)(1) or (b)(2). See 18 U.S.C. § 3145(c). Under the pertinent subsections of Section 3143, release may be authorized if the court finds by clear and convincing evidence that the Defendant is not likely to flee or pose a danger to the safety of any other person or the community if released. If the court makes these findings, then the court may order the Defendant's release, under appropriate conditions, if "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).

United States v. Ortiz, 2020 U.S. Dist. LEXIS 67651, *10 (M.D. Pa. Apr. 17, 2020). Thus, in order for us to grant the defendant's motion for temporary presentence release, we must find by clear and convincing evidence that he does not present a flight risk or danger to the community. This burden remains despite the onset of the COVID-19 pandemic and its appearance in the Dauphin County Prison. See United States v. McDuffie, 2020 U.S. Dist. LEXIS 59594 (S.D.N.Y. Apr. 3, 2020) (only granting presentence release for defendant where conditions of release could be imposed to assure the safety of the community).

This is an exacting burden of proof for Aviles, a previously convicted drug trafficker who awaits sentencing after being convicted of drug trafficking and firearms offenses while on probation for another offense. In effect, Aviles invites us to find that we erred when we previously ordered his pretrial detention. Given this

high burden at this procedural stage, for the reasons set forth below, we are unable to make this determination, and the defendant's motion will accordingly be denied.

## A. <u>Temporary Release Under 18 U.S.C. § 3142</u>

While cast as a motion seeking temporary release under 18 U.S.C. §§ 3142 (i), and 3145, this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." <u>Id.</u>; <u>see also</u> <u>United States v. Salerno</u>, 481 U.S. 739, 755 (1987).

> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Further, given the defendant's conviction, his detention is typically mandatory pending his sentencing unless the court either "determines that there is a substantial likelihood that a motion for acquittal or new trial will be granted or the Government recommends that no sentence of imprisonment be imposed, and the court finds that the Defendant is not likely to flee or pose a danger to any other person or the

community." <u>United States v. Ortiz</u>, 2020 U.S. Dist. LEXIS 67651, *9 (M.D. Pa. Apr. 17, 2020) (citing 18 U.S.C. § 3143(a)(2)). As we have noted, the defendant's case does not fall within any of these narrow exceptions to the mandatory detention called for by the Bail Reform Act for offenders awaiting sentencing.

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, §§ 3142(i) and 3145 constitute limited safety valve provisions, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standards prescribed by statute—which require a showing of some "compelling" or "exceptional reason" to warrant temporary release from custody— suggest that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for

example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling or exceptional reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

One additional example of a compelling and immediate need for release has become the unfortunate invasion of the novel coronavirus into the nation's prisons. While the pandemic has taken some time to reach correctional institutions, this development has prompted a new dimension for courts to consider when evaluating these motions for presentence release. At base, cases where the defendant is housed in a facility with confirmed cases of COVID-19 recognize this fact as highly significant to a bail or detention decision, but is not by itself outcome determinative. Instead, these judgments remain highly fact-intensive inquiries which take into account the unique circumstances of each case and each defendant. However, these cases call for a more rigorous evaluation of the circumstances of both the prison and the defendant.

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020

WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum, courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account

15

the important considerations of public safety and flight which animated the original

decision to detain the offender. Thus, "in considering the propriety of temporary

release, the court would need to balance the reasons advanced for such release

against the risks that were previously identified and resulted in an order of

detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar.

27, 2020). In practice, therefore, a decision on a motion seeking release under

§ 3142(i) entails an informed judgment assessing both individual health concerns

and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the
> defendant's pretrial detention, (2) the specificity of the defendant's
> stated COVID-19 concerns, (3) the extent to which the proposed release
> plan is tailored to mitigate or exacerbate other COVID-19 risks to the
> defendant, and (4) the likelihood that the defendant's proposed release
> would increase COVID-19 risks to others. The court will not
> necessarily weigh these factors equally, but will consider them as a
> whole to help guide the court's determination as to whether a
> "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan.

Mar. 25, 2020).

In addition, those defendants seeking presentence release must demonstrate

by clear and convincing evidence that they do not present a risk of flight or a danger

to the community. This remains the case even where COVID-19 has invaded the

correctional institution where the defendant is housed. In such instances we are still

enjoined to carefully consider the public safety and risk of flight considerations

mandated by law which led to the initial detention of the defendant. Indeed, it appears that this may often be the determining factor for many defendants seeking pretrial or presentence release from such institutions. See, e.g., United States v. Gumora, 2020 U.S. Dist. LEXIS 65749 (S.D.N.Y. Apr. 14, 2020) (denying release to defendant with HIV; asthma; high blood pressure; and various heart conditions including arrhythmia, tachycardia, and bradycardia despite an outbreak in the prison facility involving 13 confirmed cases because the defendant could not be trusted on conditions of release); United States v. Porter, 2020 U.S. Dist. LEXIS 64060 (E.D. Mich. Apr. 13, 2020) (denying release to defendant with asthma and COPD despite some 184 confirmed cases of COVID-19 with at least two deaths because the defendant could not be trusted on release conditions); United States v. Passley, 2020 U.S. Dist. LEXIS 62814 (E.D.N.Y. Apr. 9, 2020) (denying release to inmate in an institution with an outbreak of 12 individuals where defendant had a compromised immune system, but presented as a flight risk who had violated conditions of release in the past); United States v. Conley, 2020 U.S. Dist. LEXIS 66610 (S.D.N.Y. Mar. 31, 2020) (defendant not released despite multiple inmates testing positive and his underlying medical conditions because he could not be trusted on conditions of release). But see United States v. McDuffie, 2020 U.S. Dist. LEXIS 59594 (S.D.N.Y. Apr. 3, 2020) (granting presentence release for defendant with rheumatoid arthritis, high blood pressure, and cardiac issues where cases in the correctional

institution increased rapidly in a few days and where conditions of release could be imposed to assure safety); and <u>United States v. Jackson</u>, 2020 U.S. Dist. LEXIS 68045 (E.D.N.Y. Apr. 17, 2020) (granting release where defendant had asthma with an inhaler, could be trusted on release conditions, and facility saw a dramatic increase in cases with inadequate testing capabilities).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

### B. <u>The Defendant's Motion for Temporary Release Will Be Denied.</u>

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." <u>United States v. Roeder</u>, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-

19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant alleges that he suffers from herniated discs and fibromyalgia, and the more recent afflictions diagnosed in the custodial setting of type-2 diabetes, high blood pressure, and hyperlipidemia for which he takes medication.[2] These medical conditions, while a necessary prerequisite to a motion for temporary release, standing alone are not sufficient to justify release. United States v. Brown, Crim. No. 1:19-CR-259 (M.D. Pa. May 4, 2020) (denying pretrial release for defendant suffering from asthma, high blood pressure, diabetes, and various mental health issues); United States v. Serrano-Munoz, Crim. No. 1:17-CR-233 (M.D. Pa. Apr. 29,

---

[2] Based on these diagnoses in the custodial context, it appears that the defendant is receiving good medical care in the prison setting—perhaps better than if he were released.

2020) (denying release for defendant with type-2 diabetes and high blood pressure); United States v. Young, 2020 U.S. Dist. LEXIS 76573 (N.D. Ind. Apr. 30, 2020) (denying release for diabetes, diabetic retinopathy, high blood pressure, and high cholesterol). In addition to these medical conditions, however, the defendant indicates that COVID-19 has invaded the Dauphin County Prison, the correctional institution which confines him, and that there are at least 21 confirmed cases within the facility. Exacerbating this development is the fact that these cases are largely comprised of asymptomatic carriers—those notoriously difficult to diagnose and contain.

While this development has given us significant pause, and indeed makes this a much closer case, we must still weigh those specific health concerns against the substantial public safety considerations which led the court to order the defendant's detention in the first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: his criminal recidivism and penchant for committing crimes involving controlled substances and guns since he was 20 years old. In addition, the defendant faces a lengthy period of incarceration following his conviction, and his history of noncompliance with conditions of release does not inspire confidence that he will willingly report for sentencing when the time comes or that he will not commit more violations during his release. Thus, while we do not

wish to minimize the seriousness of the defendant's medical conditions and those at the Dauphin County Prison, the defendant is unable to prove by clear and convincing evidence that he does not pose a danger to society or a flight risk in this case.

Lastly, we note that the defendant has a new third-party custodian who has stated that she is ready and willing to house the defendant, should we grant his presentence release and has indicated that he does not request a hearing on this motion unless the court deems it necessary to hear from this new proposed third-party custodian. We note that we are not required to conduct an evidentiary hearing to determine whether presentence release is appropriate. See United States v. Oaks, 793 F. App'x 744, 747 (10th Cir. 2019); United States v. Hensler, 18 F.3d 936 (5th Cir. 1994); United States v. King, 849 F.2d 485, 490 (11th Cir. 1988); see also Jones, 2020 U.S. Dist. LEXIS 59755, 2020 WL 1674145, at *2-5.

In this case, in the exercise of our discretion we are declining to schedule such a hearing. While we do not doubt that Aviles' proposed third-party custodian is ready and willing to accept the defendant into her home before the defendant's sentencing, we find that the facts and circumstances which caused the court to initially detain the defendant have not materially changed. However, the legal benchmarks which Aviles must meet to secure release have changed in ways which dramatically heighten the showing he must make to justify release prior to sentencing. Given this changed legal landscape, quite simply, the defendant has not and cannot demonstrate

that he does not pose a danger to the community. Indeed, Aviles committed the present offense for which he was convicted while on probation with Lebanon County. Thus, while the bases propounded to justify the defendant's release give us great pause and make this determination a close one, the fact that Ailes cannot be trusted on conditions of release has, in our view, become the determinative factor in his case. Given these circumstances, we do not find it necessary to subject the defendant, counsel, and an additional third-party custodian to a hearing in this case where the defendant was otherwise unable to meet the difficult burden that he faced in this case.

## IV.   <u>Conclusion</u>

Weighing and balancing these countervailing considerations we conclude that the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are exceptional reasons that justify the defendant's release. <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.

So ordered this 14th  day of May 2020.


_/s/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:15-CR-181** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JULIO AVILES, SR.** | : | |

## ORDER

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. §§ 3142(i) and 3145 is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are exceptional reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 14th day of May 2020.


/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge